Good morning, your honors, and may it please the court, Bob Dato for the appellant, First Bank. As this court is aware, this case concerns a set-aside letter and whether summary judgment was appropriate based on the terms of that letter. Gulf's theory in this case is that because First Bank's set-aside letter is irrevocable, there are only two ways that First Bank's One, all the money is dispersed, or two, Gulf releases its bond. And under the plain language of the agreement, why isn't that so? The reason it isn't so, let's take the precise factual scenario that we have in this case, but with one exception, that the public improvements get done. But before Gulf discharges its bonds, releases its It realizes, hey, First Bank didn't notify us like the set-aside letter says it should. Gulf runs down to court, sues for breach of contract and conversion, and under the logic of Gulf's argument, the same result occurs. They get the $2 million. I submit that couldn't possibly be the I think how we got here today. My worry, counsel, has to do with what I read in the district court's opinion. The district court opinion says, Plaintiff does not move for summary judgment on the issue of the amount of damages to be awarded on D's breach of contract. The court, therefore, need not reach the If, in fact, the court didn't reach damages on summary judgment for breach of contract, why are you appealing that? Because the court awarded over $2 million in damages. But it was all in conversion. That was an alternative theory, that's true. That's the only thing that they awarded damages on. Plaintiff didn't move for summary judgment on damages from breach of contract. That's what the court says. The court, therefore, need not reach the damages issue. So he moved to conversion. So it seems to me the only kind of claim you got at all is in conversion. Okay. Let's address conversion then. Well, I'm just trying to see if there's any way you can undo that. I just read what the court did. And I had obviously not quite put it together that way. It was in the footnote there. And I guess so when we get to conversion, we're talking about three things, whether plaintiff had an ownership or a right of possession to the property, whether the defendant converted the property through a In that particular matter, when we're talking about conversion, really the ownership or right of possession is the critical issue, isn't it? Because there were $2,177,620.31, which was undisbursed at the time. So we're not really talking about whether there was a sum there. We're not really talking about whether the bank sent out the reconveyance of the deed without getting the appropriate amount because the banks agreed to that. We're really talking about whether there was an ownership or right of possession. So would you address that under California law? I will address that under California law. And Gulf's argument here, as I understand it, is they've got a contractual right to specific funds. So therefore, they can go in there and get them. That's how I understand Gulf's argument. That's how I understand the district court's opinion. And they also say that it was set aside, right? It was set aside, but it's not as though it's in a specific fund. It's an amount that is set aside in a budget. It's not as though – Are you saying that it was set aside? I agree that it was set aside in the budget because that's exactly what the set-aside letter says. So the amount on that basis is ascertainable, right? Certainly ascertainable, yes. Is it a specific fund that you can go get? Our argument is no. What's your best California case for the idea that this is not an ownership or right of possession case? What's the best case you've got? Ooh.  Go ahead. I'm an Idaho guy. I don't like to make torts out of contracts. I'll be fair. I'm down in California now, and I've got to deal with the California law. So what's your best case? Boy. Well, I don't read the footnote as Judge Smith does. I mean, the footnote seems to me not to be saying there's no issue of whether damages could be recovered on the contract claim. Rather, particular, you didn't make a motion that particular elements of damages were not recovered. Right. Or Gulf didn't. Right. Right. Gulf didn't. Right. So, I mean, to me, the breach of contract action is quite a lie in your theory that there's no. I'm going to use up my 10 minutes pretty fast here. So either on conversion or breach of contract, I guess, what case do you have that suggests there's no damage for breach of the agreement? And that's not my argument. My argument is that Gulf as the moving party has got to show that they were damaged to whatever million dollars. That's part of their case in chief on their motion for summary judgment. I thought you were arguing there can't be any because there was substitute financing. There might not be. Certainly, from our contention, it's possible that Gulf wasn't damaged at all. Because for other. The difference between two point, you know what, I've lost the numbers. Right. 2.1 and let's say 1.8 million. No. You're just saying nothing should have been awarded. No. What I'm saying is damages of that about you can't say as a matter of law that that's what the damages are in this case. That's what our argument is. I don't know what the damages are. Okay. I'm completely. I guess I'm completely confused. Maybe you better just say in English. Because I sure understood what your entire theory was on summary judgment was that you had substitute financing. Correct. And there shouldn't be a windfall to Gulf. No matter whether the windfall is $1 or 2 million or 5 million. Sure. That was absolutely the theory on summary judgment. So you understood that correctly. Okay. But that was because more was spent on the improvement. The improvements cost a lot more than originally anticipated. Absolutely. A lot more was spent than the 7 point some million dollars that was subject to the set aside. Right. And by that reason, Gulf would have suffered more damages had there been no refinancing and they'd have had to honor the bond. And First Bank had paid out all monies. So they have actually there's a betterment kind of argument. That's precisely. I wish I could have said it that eloquently. Yes. That's the argument. Okay. But you've got you're dealing in an area of contract where where strict enforcement is the rule, not the exception. I mean, surety bonds are they are they are gamblers of the first order and they serve a necessary function. And in order to entice them to participate in these kinds of deals, any kind of modification without their consent negates the deal. That's that's the theory. I understand it. Yes. So here they don't get notice. They don't they're not allowed to participate. And the judge says, look, this is the deal. It's irrevocable. And I almost equated it to a specific performance kind of decision by the by the judge. This is what they're entitled to. And it's not like they didn't suffer any damages. They paid out more than the two point one seven. If you look at the settlement with the county with Nevada County. Right. Which which, again, wasn't even in front of the judge Carlson at the time. Summary judgment was granted. That's that's an after the fact thing. And our contention is you can't just leap from the breach to two million dollars. You still have to show you're damaged and you're damaged in that amount in order for a judge to issue summary judgment without a trial. That's that's the point. I must not have much time left. So I will heed Judge Reimer's advice and take my 30 seconds or whatever it is that I probably don't even have. Thank you very much. May it please the court. Good morning. I'm James Kern and I represent a Pele Gulf insurance company. This case is not one about damages. This case is about the enforcement of a written agreement, of a written set aside agreement by its very terms was irrevocable, meaning that it can't be changed, can't be modified, can't be amended. The argument is that's well and good. But under California contract law, you've got to have damages in order to sustain an action. Absolutely. So it is about damages. But that wasn't at issue before the court because First Bank's performance. I'm sorry, Your Honor. Is that the whole theory? No, Your Honor. Well, this case is really more. When you talk about isn't that the whole theory, that's certainly not Gulf's theory. That may be First Bank's theory. But the only way the court should engage that theory is if the court wants to look beyond the express terms of the set aside agreement. Because those express terms of the set aside agreement control. The argument is you can't enforce the agreement in the air. Well, Gulf isn't asking this court to enforce the agreement in the air. You've got $2 million. We don't have that yet. Of course not, because it's on appeal. But, Your Honor, by the very terms of the agreement, First Bank was required to pay out $7.7 million to pay for or complete the improvements. It paid out a little over $5.5 million. It remained undisbursed $2.17 million. That is undisputed. It is also undisputed that First Bank was obligated to pay to Gulf in the event Bolden Ranch failed to pay for or complete the improvements. First Bank was required to pay the undisbursed balance, $2.17 to Gulf. That isn't in the air. It was not required for Gulf to have spent monies at that point in time. All that was required. Your answer is, I understand it, that the damages that you're entitled to are specified in the contract. Yes, Your Honor. What was paid out and what wasn't. Yes, Your Honor, because that's exactly what the set-aside agreement says. Why don't you just answer it that way? I mean, that solves that problem, doesn't it? Yes, Your Honor, it does. Okay. And so what First Bank is asking this Court to do, by even considering the issue of damages, is to somehow draft into that irrevocable set-aside agreement a limitation of liability. That it's asking the Court to not award any damages to Gulf if somehow anyone spent more than $7.7 million to complete the improvements. But that's not what the set-aside agreement provided. The set-aside agreement, again, provided that First Bank had that irrevocable obligation to pay to Gulf the 2.17 in the event that Bald and Ranch failed to pay for or complete the improvements. And it's undisputed that Bald and Ranch failed to pay for or complete the improvements. And that obligation can terminate only upon one of two events. Either First Bank pays that money or Gulf releases its bonds. And, again, it's undisputed that First Bank did not pay the money and Gulf did not release the bonds. There should be undisputed that absolutely First Bank owes that amount to Gulf. And, indeed, Gulf was damaged by First Bank's failure to pay those funds after Bald and Ranch failed to pay or complete the improvements. Because at that moment in time, Gulf was entitled to those funds to use to pay for the claims made against its bonds. Those funds were set aside and allocated expressly for that purpose as security to Gulf so that it wasn't having to spend its own funds, so that it could look to those funds in the event that Bald and Ranch failed to pay for or complete the improvements. But isn't the full extent of the argument that made by the bank that if, in fact, all of the funds that were paid out otherwise extinguished funds or claims that could be made against Gulf on the bond and added claims against Gulf above and beyond the bond, that, in fact, they had paid out on their account far more than the bank would have given you, and therefore no damage? Because you'd have had to pay all the claims. There are far more claims than the poor bank would give you in money. You'd have had to pay those, too. They were already paid, and, therefore, no damage. That's what First Bank is arguing. But isn't that, I mean, what facts are there contrary to that? Well, what First Bank is arguing are not facts. What First Bank is arguing is a hypothetical. The facts are in the record that there were far more claims paid than it seems you, Gulf, would have been required to pay than the amount of money that First Bank owes to, or that the bank owes to Gulf. No, Your Honor. I disagree with that statement. There is no facts in the record that more claims were paid as a result of other banks financing Baldwin Ranch. There is, there are facts in the record, there are facts in the record. Matt West then gave $4,631,805 to Baldwin, giving him money to pay off improvements bonded by the plaintiff. What about that fact? That may be true, and if the court wanted to somehow engage in those facts and to entertain them again, the court would be rewriting the terms of the agreement, because that's not what the agreement specified. The agreement, the set-aside agreement, was drafted by First Bank. If First Bank wanted that limitation in the set-aside agreement, it should have put that limitation in the set-aside agreement. That limitation does not exist in the set-aside agreement. There's nothing in the set-aside agreement that limits First Bank's liability upon a refinancing of the loan. There's nothing in the set-aside agreement that limits First Bank's liability in the event that more than $7. million is spent on the improvements. Indeed, the set-aside agreement anticipates that it may cost more than $7. million to complete the improvements. But it did not limit First Bank's liability to that amount. First Bank's liability was limited to complete payment of the funds set aside and allocated for GOLF's benefit or a release of the bonds. Neither one of those two events occurred, and that's undisputed. If you wanted to argue that somehow that payment of funds by someone other than First Bank diminished the cost to complete the by that, because that's reducing its liability that it owes to GOLF. Again, that's not what the irrevocable set-aside agreement provided, and that's why this Court should not be entertaining that argument. This Court should be limiting its analysis to the four corners of its set-aside agreement, to the irrevocable terms. And under those irrevocable terms, it's undisputed that First Bank breached those terms by failing to pay the funds set aside to GOLF when Baldrige failed to pay for or complete the improvements. And at that point in time, GOLF was damaged, because GOLF did not have those funds to pay the claims. If I may respond to the issue that the Court was asking about in terms of the California case, the California authority for conversion is the Hagler case, and the Hagler makes it very clear. That the funds don't have to be in a particular account. All they have to do is be specifically identifiable. The second element is that the holder of those funds interferes with the right of the party claiming the funds. Well, GOLF had the right to those funds as soon as Baldrige failed to pay for or complete the improvements. And at that point in time, First Bank should have paid those funds. Because First Bank refused to, it converted those funds to its own purpose. That's an interference of the right. And GOLF was damaged when GOLF did not have those funds to use to pay claims that were being made against its bonds, claims that were well in excess of the $2.17 million being held by First Bank. On that, if there are no other questions, I would ask this Court to, again, limit its analysis to the four corners of the agreement and affirm the district court's judgment in favor of GOLF. Thank you for your consideration. Okay. Thank you, Mr. Curran. Mr. Daya. I think Your Honor nailed it in a question when Judge Reimer asked, is the amount of damages specified by the contract? And our contention is no, which is why it is that you have to move on to a damages analysis. Judge Smith, I would be remiss if I didn't answer your question that I ducked before, so I will do so. It's the PCO case that we cited at page 25. It's the closest case we've got, and it's no closer than the case that's cited on the other side. There isn't anything directly on point, unfortunately, that I'm aware of in California on this issue. We think that PCO is the closest, and so that's my answer to your question, what's my strongest case. All right. Unless the Court has any further questions. I don't think so. Thank you. We would submit. Thank you very much, Your Honor. Counsel, the matter just argued will be submitted.
judges: Leighton, Rymer, Smith N. R.